# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA L. PAZ, | ) 1:05cv0482 JMD |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Emma L. Paz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable John M. Dixon, Jr., United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On September 23, 2005, the Honorable Oliver W. Wanger reassigned the case to the Honorable Sandra M. Snyder for all purposes. On June 1, 2007, the Honorable David F. Levi reassigned the case to the undersigned for all purposes.

# **FACTS AND PRIOR PROCEEDINGS**[2]

On May 20, 2002, Plaintiff filed an application for SSI benefits. AR 58. She alleged disability since May 18, 1988, due to cysticercosis, gastritis, dizzy spells, nervousness and headaches. AR 58, 110. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 27, 28-32, 36-40. On November 10, 2003, ALJ Daniel G. Heely held a hearing. AR 234-249. ALJ Heely denied benefits on March 9, 2004. AR 7-21. On February 2, 2005, the Appeals Council denied review. AR 3-5.

Hearing Testimony

On November 10, 2003, ALJ Heely held a hearing in Stockton, California. AR 234. Plaintiff appeared with her attorney, Jonathan Hendricks. AR 236. A Spanish-language interpreter assisted at the hearing. AR 236.

Plaintiff testified that she was born in Mexico on January 7, 1950, and came to the United States in 1967. AR 238. She became a U.S. citizen in 1996. AR 238. She attended school in Mexico for three years. AR 238. She tried to attend school in the United States, but was not able to learn. AR 238. She studied a little and learned in order to become a citizen. AR 238.

Plaintiff has a driver's license. AR 238. She can read, write and speak very little simple English. AR 238. She lives with her husband and five children. AR 239. She has a 12-year-old child in the seventh grade. AR 239. Her husband does not work. AR 239. He is an alcoholic. AR 239.

Plaintiff testified that she receives Welfare, food stamps, and MediCal. AR 240. She is not working. AR 240. She last worked in 1978. AR 240. She did work in the field. AR 240. She cannot work now because she feels very ill due to her dizziness. AR 240. She was told there was no treatment for it. AR 240. Plaintiff testified that she was seeing a general doctor who retired. AR 241. She last saw a doctor about three or four months ago. AR 241. She takes

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Aleve about three times a day for her headaches. AR 241. She buys it over the counter without a prescription. AR 241.

Plaintiff testified that she sees Dr. Fong every month for her mental problems. AR 241. She has "a lot" of depression. AR 241. She has been seeing her doctor for about four months. AR 242.

Plaintiff testified that she can sit on a sofa "a lot." AR 242. She can stand or walk about 15 minutes. AR 242. She cannot bend down because she gets dizzy. AR 242. She sits down and lays down all day and night at home. AR 242. She does very little housework. AR 242. When she is able, she puts clothes to wash, which her daughter takes out, and she washes dishes for about 15 minutes. AR 242. She does microwave cooking. AR 243.

Plaintiff testified that she does not go to social activities outside of her home. AR 243. She went to church last Saturday. AR 243-244. She goes to church about four times a month, every week. AR 244. A normal church service is one hour. AR 244. She goes to the store with her daughter about four times a month. AR 244. She watches T.V. a little. AR 244. She has not taken any trips between January 2000 and the time of the hearing. AR 244.

Plaintiff testified that she has a lot of depression and she gets a lot of depression because she cannot work. AR 245. In response to questions from her legal counsel, Plaintiff testified that she has been suffering from depression since May 31, 2002 through the hearing date. AR 245. She does not go anywhere. AR 245. She used to go out a little before she was depressed. AR 245. The depression has decreased her interest in going out to social activities. AR 245. She has less energy because she is depressed. AR 245. She does not feel like living. AR 246. She cannot sleep at night. AR 246. She felt better about herself before she was depressed. AR 246-247. She forgets everything. AR 247. She has difficulties with her memory and concentration every day. AR 247. Plaintiff testified that she is not crazy, but she feels that way. AR 247. She feels very bad and very desperate. AR 247. She "can't do nothing." AR 247.

Dr. Fong has placed Plaintiff on Paxil. AR 247. She does not take any other prescription medications. AR 247. The Naproxen Sodium listed on her medication form for her headaches and body aches is her Aleve. AR 248.

3

Medical Evidence

On January 3, 2002, Plaintiff sought emergency treatment at San Joaquin General Hospital for complaints of abdominal pain. AR 133-139. She had a past history of gastritis. AR 133. Marc Krueger, D.O., assessed Plaintiff with right upper quadrant abdominal pain, most likely secondary to recurrent gastritis, and gastritis. AR 134. While in the emergency room, Plaintiff received a "GI cocktail," which included viscous lidocaine, Mylanta and Donnatal. AR 134. Chemistry, urinalysis, coagulation, hematology and an abdominal series were obtained. AR 135-139. The acute abdominal series was negative. AR 134, 139. She was given Pepcid (to be taken for 15 days) and discharged. AR 134.

On December 4, 2002, Plaintiff underwent a visual acuity test at Amberstone Medical Group. AR 214. The results of the visual acuity showed 20/40 vision in both eyes without glasses. AR 214. The report noted that Plaintiff wears reading glasses. She could visually move about the office without any help. AR 214.

On December 4, 2002, Rebecca Jordan, M.D., a board eligible neurologist, completed a neurological evaluation of Plaintiff at the request of the Department of Social Services, Disability Evaluation Division. AR 209-213. The evaluation was completed through a professional Spanish interpreter. AR 209. Plaintiff complained of cysticercosis, headaches, and depression. AR 209. She reported that her headaches were almost constant, especially when she gets nervous or mad and when she sees her husband abuse alcohol. AR 209. The pain intensity ranges between 3/10 to 9/10. She sometimes sees spots. She has nausea, photophobia and sonophobia. AR 209.

Plaintiff also complained of dizziness. She reported it as constant, especially when she looks up or moves a lot. AR 209. She gets dizzy when she lies down and does not sleep supine on her bed. AR 209-210. She has tinnitus, a sense of fullness in the ears and some hearing loss on the right side. Plaintiff indicated that surgery was offered but she decided against it. She does not take medication for her dizziness. AR 210.

Dr. Jordan conducted a physical examination of Plaintiff. AR 210. She opined that Plaintiff was an obese female in no acute distress. Dr. Jordan reported that Plaintiff did not want

to lie supine on the examining table because it would make her dizzy. AR 210. Plaintiff was able to look down, up and bend sideways as well as rotate slowly to either side. AR 211.

Upon neurologic examination, Plaintiff was alert and oriented. AR 211. She was able to communicate through the interpreter. AR 211. She was able to maintain attention and follow instructions. AR 211. She could walk without any assistive device. She walked carefully. There was no clear dizziness as Plaintiff moved about. AR 212. She did not fall. Her static balance was good. AR 212. Plaintiff did not try walking on her heels or toes or tandem because she was afraid she would fall. AR 212. Dr. Jordan reported that provocative maneuvers for vertigo could not be done because of complaints of dizziness. AR 212.

Dr. Jordan opined that Plaintiff has complaints of chronic headaches (muscle/tension type and vascular headaches) and a history of cerebral cysticercosis. AR 212. Dr. Jordan further opined that Plaintiff has chronic dizziness with a vertiginous character. Dr. Jordan indicated that while records implied that Plaintiff's dizziness was due to the cysticercosis, history suggested labyrinthine disease. AR 212. A full examination for vertigo was hampered by Plaintiff's complaints of dizziness. AR 212. Dr. Jordan further opined that emotional/psychological factors may be affecting Plaintiff's perception of and reaction to her symptoms. AR 213.

Dr. Jordan reported that Plaintiff's vertigo would significantly limit her climbing and working in unprotected heights. AR 213. Plaintiff could stand and walk at a leisurely pace for an estimated 6 hours with customary breaks. AR 213. She could sit unrestricted. She could handle, manipulate and use push-pull devices and foot controls. She could lift and carry 25 pounds frequently and 50 pounds occasionally. AR 213. Dr. Jordan opined that Plaintiff's complaints of headaches suggested limitation in overall ability to function "whenever she may have a severe enough one." AR 213. Plaintiff could hear normal conversational tones. AR 213. Plaintiff had a decrease in visual acuity, but could move about without additional visual guidance. AR 213.

On January 8, 2003, staff psychiatrist Irwin Lyons, M.D., Ph.D., completed a Mental Residual Functional Capacity Assessment form. AR 175-178. Dr. Irwin opined that Plaintiff did not have any significant limitations in understanding and memory, in sustained concentration and persistence, in social interaction or in adaptation. AR 175-176.

On January 8, 2003, Dr. Lyons also completed a Psychiatric Review Technique form. AR 179-192. Dr. Lyons opined that Plaintiff had a mood disorder not otherwise specified. AR 182. She had mild to no functional limitations in her activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence or pace.[3] AR 189.

On January 10, 2003, a medical consultant completed a Physical Residual Functional Capacity Assessment form. AR 201-208. The consultant opined that Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. AR 202. Plaintiff had unlimited ability to push and/or pull other than as shown for lift and/or carry. AR 202. She occasionally could climb, balance, stoop, kneel, crouch and crawl. AR 203. She had no manipulative, visual or communicative limitations. AR 204-205. She should avoid concentrated exposure to hazards (machinery, heights, etc.). AR 205.

On July 3, 2003, M. Mehrkhast, M.D., completed a Physical Residual Functional Capacity Assessment form. AR 193-200. Dr. Mehrkhast opined that Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. She had no limitations on her ability to push and/or pull other than as shown for lift and/or carry. AR 194. She had occasional limitations on climbing, balancing, stooping, kneeling, crouching and crawling. AR 195. She had no manipulative, visual or communicative limitations. AR 196-197. Dr. Mehrkhast opined that Plaintiff should avoid concentrated exposure to hazards (machinery, heights, etc.) due to possible dizziness. AR 197.

On July 3, 2003, Plaintiff sought crisis/psychiatric emergency services from San Joaquin County Mental Health ("Mental Health"). AR 231-232. The contact sheet identified Plaintiff's global assessment of functioning ("GAF") as 45. AR 231. T. Oliver, L.C.S.W., noted that Plaintiff was overwhelmed with the death of her children. AR 232. Plaintiff was depressed and

---

[3] Dr. Lyons refers to a consultative examination completed by a psychologist. The record before the Court does not contain a consultative psychological examination report. In connection with the report, Dr. Lyon opined that the consultative examiner's conclusion that Plaintiff would have problems with detailed/complex tasks was invalid because the Plaintiff did not cooperate with testing and she dissembled. AR 191. Dr. Lyons further opined that it was "preposterous" that Plaintiff did not know the alphabet. AR 191.

tearful, with no energy and poor motivation. AR 232. Clinician Oliver indicated that Plaintiff's diagnostic impression was major depression with multiple stressors. AR 232.

On July 7, 2003, Donald R. Walk, M.D., completed a Psychiatric Review Technique form. AR 156-169. Dr. Walk opined that Plaintiff had a depressive syndrome characterized by appetite disturbance with change in weight, sleep disturbance, decreased energy and difficulty concentrating or thinking. AR 159. He further opined that Plaintiff had a medically determinable impairment that did not precisely satisfy the diagnostic criteria of mental retardation ("? BIF"). AR 156, 160. Dr. Walk indicated that Plaintiff had mild restrictions of her activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace.[4] AR 166.

On July 7, 2003, Dr. Walk also completed a Mental Residual Functional Capacity Assessment form. AR 170-173. Dr. Walk concluded that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions and moderate limitations in the ability to carry out detailed instructions. AR 170. He indicated that Plaintiff's BIF may reduce her ability to manage detail. AR 172.

On July 23, 2003, Plaintiff underwent a medication evaluation by a psychiatrist at Mental Health. AR 233. The psychiatrist identified Plaintiff's impression as major depression and indicated a possible bipolar diagnosis. AR 233. She was prescribed Luvox and Vistaril and given a return appointment. AR 233.

On July 29, 2003, Plaintiff underwent an assessment by Angelica Sosa, M.A., from Mental Health. AR 224-230. Ms. Sosa described Plaintiff's history of present illness and indicated that Plaintiff first contacted Mental Health crisis on July 3, 2003, complaining of anxiousness due to multiple stressors: husband an alcoholic, daughter on "PHF," death of 2 of her 7 children, financial problems, arguments between husband and daughter, and diagnosis of cystercercosis.

---

[4] Dr. Walk's notes refer to a December 4, 2002, consultative examination, which included a mental status examination and psychological testing. AR 168. In his notes, Dr. Walk opined that Plaintiff gave up too easily and some psychological testing scores from the consultative examination were lower than they should be. AR 168. Dr. Walk also reported that the consultative examiner diagnosed Plaintiff with an adjustment disorder, moderate depression and borderline IF. AR 168. The record before the Court does not contain a consultative psychological examination report.

AR 224.  Plaintiff reported that she was receiving SSI until her daughter's death in 1997, when she received her daughter's life insurance money.  AR 224.  Plaintiff reported feeling sad, crying, suicidal thoughts (no plan or intent), decreased concentration and decreased energy.  AR 224.  Plaintiff was given Luvox and Vistaril on July 23, 2003, but remained depressed.  AR 224.

Ms. Sosa noted that Plaintiff had an appropriate affect and depressed mood.  AR 227.  She had no evidence of illogical thinking or delusional ideation.  AR 227.  She had good orientation and attention.  She was unable to focus on internal tasks or recall information in 5 minutes.  Ms. Sosa opined that Plaintiff had good reasoning, judgment and insight.  AR 227.  She had poor calculation.  AR 227.

Ms. Sosa diagnosed Plaintiff with a major depressive disorder, recurrent severe without psychotic features.  AR 228.  Ms. Sosa identified Plaintiff's global assessment of functioning ("GAF") to be 40.  AR 228.  Plaintiff had minimal activities of daily living and minimal social relationships.  AR 228.  Ms. Sosa opined that Plaintiff needed supportive services to maintain her current level of functioning in the community and to obtain needed mental health services.  AR 229.  Plaintiff's preliminary plan included medication support and bi-weekly therapy.  AR 230.

On July 29, 2003, Ms. Sosa developed a treatment plan for Plaintiff to alleviate symptoms of depression and to begin the grieving process.  AR 223.  Plaintiff would receive medication support through June 30, 2004 and therapy through January 30, 2004.  AR 223.

On August 12, 2003, Plaintiff sought treatment at Mental Health.  AR 222.  Progress notes indicated that Plaintiff was sad and tired.  She had problems sleeping and eating too much.  She had occasional suicidal thoughts with no plan and no intent.  AR 222.  She had poor concentration and multiple psychosocial stressors.  AR 222.

On August 21, 2003, Plaintiff saw John Fong, M.D., at Mental Health.  AR 220.  Dr. Fong noted that Plaintiff's mood was sad and her sleep was poor.  She was eating too much.  Dr. Fong discontinued Plaintiff's Luvox and prescribed Paxil.  AR 220, 221.

On September 4, 2003, Plaintiff saw Dr. Fong at Mental Health.  AR 219.  Plaintiff had decreased crying , decreased irritability and better sleep.  Dr. Fong noted that Plaintiff already improved over 14 days.  He continued to prescribe Paxil.  AR 219, 221.

On October 9, 2003, Plaintiff saw Dr. Fong at Mental Health. AR 218. Dr. Fong noted that Plaintiff had a bad attack of nerves. She had 6 of 35 reasoning and she "forgets." Dr. Fong continued to prescribe Paxil. AR 218.

On November 4, 2003, Plaintiff sought treatment at Mental Health. AR 217. She complained of increased nervousness because her daughter was threatening her husband. Plaintiff reportedly was instructed to call police if the threat was serious and imminent. Progress notes indicated that Plaintiff's Paxil would be increased if the situation continued. AR 217. On November 13, 2003, Plaintiff again sought treatment from Dr. Fong. AR 216. Plaintiff reported low energy. Dr. Fong opined that Plaintiff had increased symptoms due to her environment. He increased her Paxil dosage. AR 216, 221.

ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 20. The ALJ also found that Plaintiff's obesity, headaches, vertigo and depression were considered "severe." AR 20. The ALJ concluded that these impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. AR 20. The ALJ found that Plaintiff's allegations regarding her limitations were not totally credible. AR 15-16, 20. He also found that Plaintiff retained the residual functional capacity ("RFC") to engage in medium work requiring only simple, repetitive tasks. She should not work around unprotected heights or moving machinery. Plaintiff's severe mental impairment did not preclude unskilled work because it did not have a significant impact on her ability to understand, remember and carry out simple instructions or repetitive tasks, to respond appropriately to supervision, coworkers and usual work situation, or to deal with changes in a routine work setting. AR 20. The ALJ further found that Plaintiff's depression did not restrict her activities of daily living. She had mild difficulties maintaining social functioning and moderate deficiencies of concentration, persistence or pace. She retained the full range of understanding and memory, sustained concentration and persistence, social interaction and adaptation skills necessary to engage in simple, unskilled work. AR 20. Plaintiff did not have past relevant work. AR 21. She was an individual closely approaching advanced age and unable to communicate in

English.  The ALJ concluded that she had the RFC to perform the full range of medium work.  AR 21.  Therefore, the ALJ used Medical-Vocational Rule 203.18 as a framework and determined that Plaintiff was not disabled.  AR 21.  He also concluded that Plaintiff's capacity for medium work had not been significantly eroded by any nonexertional limitations.  AR 21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means more than a mere scintilla, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401 (internal quotation marks and citation omitted).  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the correct legal standards and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. § 416.920 (a)-(g) (2004). Applying the evaluation process in this case, the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (obesity, headaches, vertigo and depression) based on the requirements in the Regulations (20 C.F.R. § 416.920(c) (2004)); (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in Appendix 1 to Subpart P of Part 404; (4) does not have past relevant work; and (5) despite non-exertional limitations, can perform substantially all of the full range of medium work. AR 20-21.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff contends that (1) the ALJ failed to develop the record by not ordering a consultative examination and (2) the Appeals Council erred by not awarding disability at age 55 as mandated by the Medical-Vocational Guidelines ("Grids").

## DISCUSSION

A.   Substantial Evidence

   1.   Duty to Develop the Record

Plaintiff alleges that the ALJ failed to develop the record regarding Plaintiff's mental impairment because a consultative psychiatric evaluation was not obtained. Plaintiff argues that the ALJ's duty to develop the record includes ordering a consultative examination in cases where the medical records are incomplete.[5] Generally, it is the duty of the claimant to prove to the ALJ that she is disabled. 20 C.F.R. § 416.912(a) (2004). To this end, she must bring to the ALJ's

---

[5] To support her contention regarding the ALJ's duty, Plaintiff directs this Court's attention to the decision of *Owen v. Chater*, 913 F.Supp.1413 (D. Kan. 1995). The *Owen* case concerned the appropriateness of an ALJ's step 4 determination that a claimant could return to her past relevant work. In *Owen*, the District Court found that the ALJ erred at step 4 of the sequential evaluation process and remanded the case for a step 5 determination, including analysis of the claimant's complaints of pain and a proper weighing of the opinions of the claimant's treating physicians. The *Owen* Court did not address the issue of whether the ALJ had a duty to the develop the claimant's medical record. Accordingly, Plaintiff's reliance on *Owen* is misplaced.

11

attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment and its effect on her ability to work. *Id.* For his part, the ALJ has the responsibility to develop a "complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 416.912(d) (2004). If this information fails to provide a sufficient basis for making a disability determination, or the evidence conflicts to the extent that the ALJ cannot reach a conclusion, he may seek additional evidence from other sources. 20 C.F.R. §§ 416.912(e), 416.919a(b)(4) (2004). An ALJ has a duty to develop the record fully and fairly when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, the ALJ conducted a thorough review of the entire record and thereafter made a disability determination that is supported by substantial evidence. The ALJ considered evidence of Plaintiff's mental impairment and made a specific finding that those impairments, including her depression, were severe. AR 16, 20. After reviewing the entire record, the ALJ ultimately determined that Plaintiff's mental impairment did not preclude her from performing unskilled work. AR 18.

As Plaintiff suggests, there is evidence in the record of Plaintiff's mental health impairment and low GAF scores. In reaching his decision, however, the ALJ expressly considered evidence of Plaintiff's mental health impairment, including Plaintiff's treatment records from San Joaquin County Mental Health dated July 23, 2003 through November 13, 2003. AR 16. With regard to Plaintiff's reliance on the GAF scores, the score of 45 appears on a contact sheet dated July 3, 2003, and provides no indication as to the assessor. AR 231. The score of 40 was assigned on July 29, 2003, by Ms. Sosa, who is designated as an "M.A." AR 228. Neither of these scores appear to have been generated by an "acceptable medical source." 20 C.F.R. § 416.913(a). Acceptable medical sources specifically include licensed physicians and licensed psychologists, but not an "M.A." An ALJ may give less weight to an unacceptable source than that of an acceptable medical source. 20 C.F.R. § 416.913(d); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). Although there are exceptions to this rule, such as when a treating physician adopts the opinion of an unacceptable medical source or when the unacceptable source

works closely with a physician, there is no indication those exceptions are applicable here. *Polny v. Bowen*, 864 F.2d 661, 662-664 (9th Cir. 1988); *Gomez*, 74 F.3d at 971.

      In addition, the July 29, 2003, assessment report, which contained the GAF of 40, noted that Plaintiff had an appropriate affect, no evidence of illogical thinking or delusional ideation, good orientation and attention, and good reasoning, judgment and insight. AR 227. Further, both GAF scores (40 and 45) were issued prior to implementation of Plaintiff's July 29, 2003, mental health treatment plan. AR 223, 228, 231. Following implementation of Plaintiff's plan, Plaintiff's treating physician opined that Plaintiff's condition had improved after only 14 days of treatment. AR 219. Plaintiff's physician also indicated that Plaintiff had decreased crying, decreased irritability and better sleep. AR 219. Although Plaintiff had an attack of nerves following her improvement, there is no evidence that Plaintiff's GAF assessments were an accurate indicator of the current severity of her mental impairment following implementation of her treatment plan. Accordingly, the ALJ credited evidence of Plaintiff's improvement as documented in her mental health treatment notes. AR 16. The record was neither inadequate nor ambiguous to prevent the ALJ from reaching such a determination. Thus, the ALJ had no duty to further develop the record through a consultative examination.

      Plaintiff also argues that the ALJ erred in relying on the opinion of a non-examining physician who opined that Plaintiff could perform simple repetitive tasks because the non-examining physician did not have an opportunity to review Plaintiff's mental health records. This argument is without merit. Plaintiff cites no evidence in the mental health treatment records indicating that she could not perform simple, repetitive tasks. The ALJ expressly considered Plaintiff's diagnosis of major depression and her Mental Health treatment records from July 2003 to November 2003. AR 16. Those records demonstrated that even before Plaintiff began treatment for her depression she had no evidence of illogical thinking or delusional ideation, she had good orientation and attention and good reasoning, judgment and insight. AR 227. Plaintiff herself testified that she was able to put clothes to wash, use the microwave, wash dishes, drive, and attend church. AR 242-244. Additionally, Plaintiff's medical records documented her improvement after 14 days of treatment. AR 219. At no time did her mental health treating

physician opine that she was unable to perform simple, repetitive tasks or that she was unable to work.

### 2. Application of the Grids

Plaintiff contends that the Appeals Council erred by (1) not reviewing evidence of Plaintiff's attainment of advanced age following issuance of the ALJ's decision and (2) by not finding Plaintiff disabled at age 55 utilizing the Grids.  If new and material evidence is submitted after the ALJ issues a decision, the Appeals Council will consider the additional evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision."  20 U.S.C. § 416.1470(b) (2004).  Here, Plaintiff was born on January 7, 1950.  The ALJ issued his decision on March 9, 2004.  Plaintiff turned 55, which is considered advanced age pursuant to the Regulations (20 C.F.R. 416.963(e) (2004)), on January 7, 2005.  Plaintiff's attainment of advanced age in 2005 does not relate to the period on or before the date of the ALJ's hearing decision in 2004.  As such, the Appeals Council was not required to consider evidence of Plaintiff's age or find her disabled pursuant to the Grids.[6]

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Emma L. Paz.

IT IS SO ORDERED.

**Dated:   July 5, 2007**                    **/s/ John M. Dixon**
                                   UNITED STATES MAGISTRATE JUDGE

---

[6] It should be noted that Plaintiff has the option of filing a new application based on her new age category.